**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Christopher (Crystal) Beaulieu

                    v.                           Case No. 20-cv-823-LM

New Hampshire Department of Corrections,
Commissioner Helen E. Hanks et al.[1]

**REPORT AND RECOMMENDATION**

Before the court are inmate Christopher (Crystal) Beaulieu's complaint (Doc. No. 1) and complaint addendum (Doc. No. 4), concerning incidents that occurred while she was an inmate in the N.H. State Prison for Men ("NHSP") Close Custody Unit ("CCU") in November-December 2018.[2]  The matter is here for preliminary review, under 28 U.S.C. § 1915A and LR 4.3(d)(1).

**Background**

I.    November 9, 2018 CCU Cell Placement

On November 9, 2018, while Ms. Beaulieu was in the custody

---

[1]The defendants are New Hampshire Department of Corrections ("NHDOC") Commissioner Helen Hanks; New Hampshire State Prison ("NHSP") Warden Michelle Edmark; NHSP Maj. Jon H. Fouts; NHSP Deputy Warden Sarah Provencher; NHSP Capt. Daniel Boynton; (former) NHSP Lt. Troy Fontaine; NHSP Cpl. A. Hilson; NHSP Lt. C. Dupris; NHSP Corrections Officer ("CO") E. Bazile; (former) NHSP Sgt. Robert K. Parent; NHSP Cpl. Joshua Ellis; NHSP CO Glenn Nimoriski; and unnamed NHSP COs designated by plaintiff as "John Does" 1-6.

[2]Plaintiff is a transgender female inmate presently in federal custody in West Virginia at FCI-Hazelton.  Plaintiff prefers that female pronouns be used in referring to her.

of the N.H. Department of Corrections ("DOC"), NHSP corrections
officers ("COs") moved her into the NHSP CCU.  Cpl. Joshua Ellis
assigned her to a cell with inmate James L. Merchant, who, Ms.
Beaulieu asserts, was known to be a member of the Brotherhood of
White Warriors ("BOWW"), a violent inmate gang.  Ms. Beaulieu
asserts that she was known to be a transgender sex offender, and
that she had sought protective custody ("p/c") from BOWW members
in 2016.  In addition, she asserts, Mr. Merchant had recently
assaulted another sex offender, just before Ms. Beaulieu was
assigned to his cell.  She further asserts that the NHSP
Classifications Department Director Sarah Provencher, on or
before November 9, 2018, altered Ms. Beaulieu's inmate
classification records to remove the designation that she had
sought or obtained p/c status with respect to BOWW members.

Ms. Beaulieu asserts that before moving her into Mr.
Merchant's cell, Cpl. Ellis asked her to sign a statement
agreeing to live with Mr. Merchant.  Ms. Beaulieu asserts Cpl.
Ellis told her that if she did not sign the statement and agree
to accept Mr. Merchant as a cellmate, she would need to ask for
p/c status; paperwork would need to be completed; and she would
be transferred to the Special Housing Unit ("SHU").  Compl.
(Doc. No. 1), at 7.  Ms. Beaulieu signed the statement agreeing
to be celled with Mr. Merchant.  Ms. Beaulieu asserts that she

heard from third-party inmate Bradley Winbush that CCU staff assigned her to Mr. Merchant's cell, hoping (because of her reputation as a litigious inmate) that she would choose p/c status and be transferred out of the CCU.

II.    Assaults and Threats in November 2018

Ms. Beaulieu asserts that during her time in a cell with Mr. Merchant, which lasted until November 28, 2018, Mr. Merchant "repeatedly raped and threatened" her.  Compl. (Doc. No. 1, at 7).  She asserts that NHSP Sgt. Robert K. Parent; NHSP Cpl. Joshua Ellis; NHSP CO Glenn Nimoriski; NHSP Cpl. A. Hilson; NHSP Lt. C. Dupris; NHSP CO E. Bazile; and NHSP Lt. Troy Fontaine heard Mr. Merchant threaten to hit her, but none of them took action to protect her in that time period.  Rather, Ms. Beaulieu asserts, each of those officers provoked Mr. Merchant to act on his threats by telling him something to the effect of, "No balls" - or "Pussy if you don't."

III. November 29, 2018 Cell Transfer

Ms. Beaulieu asserts that on November 29, 2018, she told an unspecified CCU lieutenant that she needed a new cell because of Mr. Merchant's "threats of harm and the sexual assault."  Compl. (Doc. No. 1, at 8).  She asserts that the lieutenant made a

3

dismissive comment, saying something like, "Man up," and then officers moved her to a different cell on November 29, 2018. Id.


IV.  December 5, 2018 Assault

     Ms. Beaulieu asserts that after she was moved out of Mr. Merchant's cell, she complained to unspecified CCU staff officers that Mr. Merchant had called her a "race tra[i]tor" and had threatened to assault her.  Compl. (Doc. No. 1, at 8). Then, on December 5, 2018, he made good on that threat.  Ms. Beaulieu asserts that after she had been released from her cell on B-Tier into the corridor to receive prescription "red meds" from Health Services staff, she took a detour towards C-Tier to put something in a mailbox.  Near the unit sergeant's office, she encountered inmate Merchant, who first asked her, "Remember me?" before punching and kicking her multiple times in the face, causing her to drop to the floor, black out, and cry for help. Ms. Beaulieu asserts that the assault lasted several minutes in direct view of the CCU control room, where CO Bazile appeared to be on the phone.  Ms. Beaulieu asserts that it took unspecified CCU officers several minutes to respond to the assault.  She further claims that those officers did not bring her to the Health Services Center afterwards even though she was "dripping

blood all over the place."  Compl. (Doc. No. 1, at 11).

## Claims

The pleadings in this case (Doc. Nos. 1, 4) assert the following claims for damages:

1.    Defendants violated Beaulieu's Eighth Amendment rights, giving rise to liability under 42 U.S.C. § 1983, in that, with knowledge of the factors making Ms. Beaulieu especially vulnerable to assault, and the CCU's history of inmate violence:

   a.    Classifications Director Sarah Provencher removed Ms. Beaulieu's p/c designation on or before November 9, 2018, which allowed Ms. Beaulieu to be housed with a BOWW member.

   b.    Cpl. Joshua Ellis assigned Ms. Beaulieu to a CCU C-Tier cell with known BOWW member James Merchant on November 9, 2018, with knowledge of Ms. Beaulieu's vulnerability to assault.

   c.    NHSP Sgt. Robert K. Parent; NHSP Cpl. Joshua Ellis; NHSP CO Glenn Nimoriski; NHSP Cpl. A. Hilson; NHSP Lt. C. Dupris; NHSP CO E. Bazile; and NHSP Lt. Troy Fontaine heard Mr. Merchant threaten to hit Ms. Beaulieu in November 2018, but none of those officers took steps to protect her, and each of them made remarks that provoked him to act on his threats.

   d.    On December 5, 2018, while CO Bazile was on the phone and not monitoring inmates, Mr. Merchant had the opportunity to encounter and assault Ms. Beaulieu for several minutes.

   e.    CCU officers failed to respond for several minutes to what they could see or hear about the assault on December 5, 2018, delaying its end.

   f.    COs who responded to the assault did not bring Ms. Beaulieu to the Health Services Center afterwards, although it was apparent she was bleeding.

2.    Supervisory officers named as defendants failed to
properly supervise their subordinates at the NHSP,
rendering them liable under 42 U.S.C. § 1983, in that:

   a.    Supervisory officials allowed the Classifications
   Department to remove Ms. Beaulieu's designation of
   having sought or obtained p/c status on or before
   November 9, 2018.

   b.    The shift commander in charge of the CCU on
   November 9, 2018 allowed Cpl. Ellis to place Ms.
   Beaulieu in a cell with Mr. Merchant, after she agreed
   to that arrangement.

   c.    Lt. Dupris failed to supervise CO Bazile to
   prevent him from being on the phone when he should
   have been monitoring inmates who had been released
   from their cells to prevent and properly respond to
   the assault on December 5, 2018.

   d.    DOC Commissioner Helen Hanks, NHSP Warden
   Michelle Edmark, Maj. Jon Fouts, and other supervisory
   officials failed to respond appropriately to the known
   threat of inmate violence in the CCU, prior to the
   assault on Ms. Beaulieu.

   e.    Lt. Fontaine and Capt. Daniel Boynton failed to
   take steps to ensure that their subordinate officers
   would prevent inmate violence in the chow hall.


## Discussion

I.   Preliminary Review Standard

The court conducts a preliminary review of prisoner

complaints filed by inmates seeking relief from government

agents.  See LR 4.3(d)(1); see also 28 U.S.C. § 1915A.  In

considering whether the complaint states a claim, the court

determines whether, stripped of legal conclusions, and with all

reasonable inferences construed in plaintiff's favor, the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief'" upon which relief can be granted. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). Claims may be dismissed, sua sponte, if the court lacks jurisdiction, a defendant is immune from the relief sought, or the complaint fails to state a claim upon which relief may be granted. See 28 U.S.C. § 1915A(b); LR 4.3(d)(1)(A).

## II.   Eleventh Amendment and Official Capacity

The Eleventh Amendment precludes suits for damages against state employees sued in their official capacities. See Davidson v. Howe, 749 F.3d 21, 27-28 (1st Cir. 2014). Accordingly, the district judge should dismiss all of Ms. Beaulieu's claims for damages, to the extent that they may be asserted against any defendant in his or her official capacity.

## III. Eighth Amendment Endangerment

### A.   Elements

"Not 'every injury suffered by one prisoner at the hands of another' . . . 'translates into constitutional liability.'" Lakin v. Barnhart, 758 F.3d 66, 70 (1st Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

7

> Instead, a prison official violates an inmate's Eighth Amendment right against cruel and unusual punishment "based on a failure to prevent harm" to the inmate only under two circumstances: "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and the prison official must have acted, or failed to act, with "deliberate indifference to inmate health or safety."

Lakin, 758 F.3d at 70 (quoting Farmer, 511 U.S. at 834).  To act with deliberate indifference to health and safety, a prison "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837. Prison officials "who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Id. at 844.  "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause."  Id.

    B.    Change in P/C Designation as to BOWW (Claim 1(a))

    Claim 1(a) summarizes Ms. Beaulieu's sparse allegations relating to her claim that prison officials violated her Eighth Amendment rights by removing the designation in her records indicating that she had applied for and/or had been granted p/c status in 2016 as to BOWW members.  The allegations in the

complaint indicate that inmates can reapply for p/c status, even if there is no pre-existing record that they have been granted such status previously.  The facts alleged as to the alteration of Ms. Beaulieu's Classification records, without more, do not state a claim that any individual acted or failed to act with deliberate indifference to a substantial risk of serious harm to Ms. Beaulieu in changing her p/c record.  Accordingly, the district judge should dismiss Claim 1(a).

### C.    Placement in BOWW Member's Cell (Claim 1(b))

Claim 1(b) summarizes Ms. Beaulieu's allegations that Cpl. Ellis violated her Eighth Amendment rights by assigning her to a cell with a violent BOWW member.  The allegations in the complaint are sufficient to survive preliminary review. Accordingly, in the Order issued this date, the court directs service of Claim 1(b) and directs Cpl. Ellis to answer or otherwise respond to that claim.

### D.    Threats and Provocation (Claim 1(c))

Claim 1(c) summarizes the allegations that Mr. Merchant raped her when they celled together, and that NHSP Sgt. Robert K. Parent; NHSP Cpl. Joshua Ellis; NHSP CO Glenn Nimoriski; NHSP Cpl. A. Hilson; NHSP Lt. C. Dupris; NHSP CO E. Bazile; and NHSP

Lt. Troy Fontaine at various times between November 9 and
November 29, 2018, all heard Mr. Merchant threaten to hit Ms.
Beaulieu in that time period, but none of them took steps to
protect Ms. Beaulieu, and each of them said remarks that
provoked him to act on his threats, all the while knowing that
Ms. Beaulieu was especially vulnerable and that Mr. Merchant was
a member of a violent gang.  The facts alleged are sufficient to
state a claim of those officers' failure to protect Ms.
Beaulieu, with deliberate indifference to a substantial risk of
serious harm.  Accordingly, in the Order issued this date, the
court has directed service upon those defendants, and each of
them is directed to file an answer to Claim 1(c).


     E.    Failure to Prevent/Respond to Assault (Claim 1(d)-(e))

         1.   Claim 1(d)

Claim 1(d) summarizes the allegations in the pleadings
concerning CO Bazile's failure to monitor inmates who are
roaming the tier, despite his knowledge of the threat posed to
Ms. Beaulieu if she were to encounter Mr. Merchant.  The
allegations relating to Claim 1(d) state a claim upon which
relief can be granted.  In an Order issued this date, the court
directs CO Bazile to file an answer to Claim 1(d).

2.    Claim 1(e)

Claim 1(e) summarizes Ms. Beaulieu's allegations that
unspecified COs did not respond for several minutes to her cries
for help on December 5, 2018.  She has alleged that the assault
took place in full view of the control room in front of the unit
sergeant's office, and that other inmates told her they could
hear her cry for help.  The allegations at issue are sufficient
to survive preliminary review.  In the Order issued this date,
the court has directed service of Claim 1(e) on CO Bazile and
has required him to answer that claim, as he was in the control
room in the relevant time period.

F.    Failure to Provide Medical Care (Claim 1(f))

Claim 1(f) summarizes Ms. Beaulieu's allegations that the
unnamed officers who responded to the assault did not take her
to the Health Services Department despite seeing her bleeding
profusely.  Ms. Beaulieu has not alleged facts stating a claim
that any officer prevented Ms. Beaulieu from obtaining medical
care after the assault, or failed to provide adequate emergency
aid to her at the scene.  Without more, the allegation that
officers did not bring her to the Health Services Department
fails to state a claim of deliberate indifference to a
substantial risk of serious harm.  Accordingly, the district

judge should dismiss Claim 1(f) for failure to state a claim
upon which relief can be granted.


IV.   Supervisory Liability

     Claims 2(a)-(e) summarize the allegations relating to Ms.
Beaulieu's claims that supervisory officials are liable under 42
U.S.C. § 1983 for the unconstitutional acts of their
subordinates, which she alleges resulted in injuries to her.

> A supervisory liability claim under section 1983 has two
> elements: the plaintiff must plausibly allege that "one of
> the supervisor's subordinates abridged the plaintiff's
> constitutional rights" and then forge an affirmative link
> between the abridgement and some action or inaction on the
> supervisor's part.

Parker v. Landry, 935 F.3d 9, 14 (1st Cir. 2019) (citations
omitted).  The "affirmative link" requires a showing of a causal
nexus between the supervisor's acts and the subordinate's
misconduct, id. at 14-15, as well as the supervisor's notice of
the subordinate's acts, see id.  "[N]otice of the alleged
violations" is an "important factor," for "one cannot make a
'deliberate' or 'conscious' choice to act or not to act unless
confronted with a problem that requires the taking of
affirmative steps." Feliciano-Hernández v. Pereira-Castillo,
663 F.3d 527, 535 (1st Cir. 2011) (citation and internal
quotation marks omitted).  But notice and awareness are not
enough, as negligence will not suffice to establish

12

constitutional liability.  Id. at 536 ("not every official who
is aware of a problem exhibits deliberate indifference by
failing to resolve it" (citation and internal quotation marks
omitted)).  "At a minimum, the plaintiff must allege facts
showing that the supervisor's conduct sank to the level of
deliberate indifference."  Parker, 935 F.3d at 15.

     Ms. Beaulieu's allegations as to supervisory conduct
relating to the Classifications Department (Claim 2(a)), and to
violence in the chow hall (Claim 2(e)), do not satisfy the
requirement that the supervisory conduct be affirmatively linked
to any unconstitutional misconduct affecting Ms. Beaulieu.  In
addition, as to Claim 2(b), the allegations do not suggest that
the shift commander had notice Cpl. Ellis would assign Ms.
Beaulieu to a cell with an inmate who was a member of a prison
gang as to which Ms. Beaulieu had sought or obtained p/c status;
indeed, Ms. Beaulieu has specifically alleged that officers
hoped Ms. Beaulieu would request p/c status.  In addition, as to
Claim 2(c), there are no allegations that Lt. Dupris had notice
that CO Bazile would fail to monitor the tier to prevent or
respond promptly to an assault affecting Ms. Beaulieu.  And
finally, the allegations as to the awareness of DOC Commissioner
Helen Hanks, NHSP Warden Michelle Edmark, Maj. Jon Fouts, and
other supervisory officials to the history of inmate violence in

the CCU fail to demonstrate that their acts or omissions

amounted to deliberate indifference, and not mere negligence.

Accordingly, the district judge should dismiss Claims 2(a)-(e)

for failing to state a claim of supervisory liability under

section 1983 upon which relief can be granted.


## Conclusion

For the foregoing reasons, the magistrate judge recommends

the following:

> 1.   Claims 1(a), 1(f), and 2(a)-(e) should be
> dismissed for failure to state a claim upon which relief
> can be granted.

> 2.   With the exception of NHSP Sgt. Robert K. Parent;
> NHSP Cpl. Joshua Ellis; NHSP CO Glenn Nimoriski; NHSP Cpl.
> A. Hilson; NHSP Lt. C. Dupris; NHSP CO E. Bazile; and NHSP
> Lt. Troy Fontaine, the district judge should drop from this
> action all of the remaining defendants, as Ms. Beaulieu has
> not stated any claim that may proceed against them in this
> action.

> 3.   The district judge should dismiss all of Ms.
> Beaulieu's claims for damages asserted against any party in
> his or her official capacity.

Any objections to this R&R must be filed within fourteen

days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).

The fourteen-day period may be extended upon motion.  Failure to

file objections within the specified time waives the right to

appeal the district court's order.  See Santos-Santos v. Torres-

Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

February 17, 2021

cc:  Christopher (Crystal) Beaulieu, pro se